**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 11, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

BRIAN V. STACY,

     Defendant - Appellant.

No. 13-2154

(D.C. No. 1:11-CR-01878-JB-1)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **ANDERSON** and **BRORBY**, Senior Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore,

submitted without oral argument.

Brian V. Stacy appeals his convictions for threatening to murder a federal judge in

violation of 18 U.S.C. § 115(a)(1)(B), and transmitting a death threat in interstate

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

commerce in violation of 18 U.S.C. § 875(c). These convictions were the result of Stacy's sending two threatening e-mails to a federal judge in 2011. The sole issue presented on appeal is whether there was sufficient evidence presented for the jury to conclude that the e-mails were objectively threatening. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I

The Honorable John Edwards Conway, Senior United States District Judge of the United States District Court for the District of New Mexico, presided over several criminal matters concerning Brian Stacy. All told, Judge Conway sentenced Stacy to imprisonment three times between 2006 and 2008—once for possessing an unregistered firearm, and twice for violating the conditions of his supervised release. On the third occasion, Judge Conway sentenced Stacy to two years' imprisonment for threatening to murder his federal probation officer. Stacy was released from prison on April 16, 2010.

On Sunday, June 12, 2011, at 9:18 p.m., Stacy sent the following e-mail to Judge Conway's e-mail address:

> John Conway,
> I spent over four years in prison for a crime I did not committe and I did not appreciate being arrested by faggott litte cowards and Charlotte Woods standing there watching as some queers were arresting me and I wanted to let you know that every time I get violent revenge on a little midget queer like yourself I am going to email you and the UN because I do not like the church of satan advertizing on my campus or charlotte getting fucked in every hole when I am in a freezing cold jail cell. So a little midget spick like you died today bitch and if you wanted some threats you got it! fuck you!

2

Supp. R. at 1. About an hour later, Stacy sent a second e-mail to Judge Conway:

> John Conway,
> I want you to know that because I was arrested on 9/18/2007 by a bunch of faggott cowards in front of Charlotte E. Woods a little faggott midgit like yourself is dead you queer! You want shit with me faggott you fucking got it bitch! you fucking little spick faggott! my girlfriend Charlotte was fucked in every fucking hole when I was in a freezing cold jail cell and then I got to do two more years in prison for your retarded fucking probation officer shawn day. You want shit you fucking nigger loving faggot spick fuck I kill people in the streets for you fucking spick bitch!! fuck you! You r too incompitent and stupid to do your job you spick faggott!! you think I want to go to jail for a gun that Joash Schumpelt had and to time for David Iglecias who got fired for the president! you little spick faggott bitch I kill people like you for fun you punk midgit queer. All because Charlotte was standing there staring at me when some faggott cowards were trying to do something after I killed fucking idiot like yourself after idiot like yourself you bitch! and because there is a nigger at UNM and in the white house that is all your ever going to get. Why dont you resign you fucking joke! spicks like you fucknig die you fucking statistic faggott!! the catholic charlotte woods got fucked in her asshole bitch and because of that fags like you die!! Fuck you!
> Thank YOu,
> Joash Shumpelt
>
> I joash shumpelt wrote this email.
>
> Prove it spick!!!

Id. at 2.[1] The subject line in this second e-mail read "I am going to kill you spick." Id.

The following morning, Judge Conway's administrative assistant opened the e-mails. Concerned, she immediately notified the U.S. Marshals. A few days later, in an interview with FBI agents, Stacy admitted to sending the e-mails. After the interview,

---

[1] When Stacy was arrested in 2005 for possessing an unregistered firearm, Joash Schumpelt was Stacy's roommate.

Stacy was placed under arrest.

A grand jury returned a two-count indictment charging Stacy with (1) threatening to murder a federal judge on account of the judge's performance of his official duties, in violation of 18 U.S.C. § 115(a)(1)(B), and (2) transmitting a death threat in interstate commerce, in violation of 18 U.S.C. § 875(c). Stacy pleaded not guilty.

Trial commenced on March 20, 2013. At the close of the government's case, Stacy moved for judgment of acquittal, in part, on the ground that the government presented insufficient evidence that the e-mails were objectively threatening. The court denied the motion, and the jury convicted Stacy on both counts.

## II

Stacy raises one issue on appeal. He contends that the government presented insufficient evidence that the e-mails were objectively credible enough to constitute a threat under 18 U.S.C. §§ 115(a)(1)(B) and 875(c).

"We review the sufficiency of the evidence to support a jury's verdict and the denial of [Stacy's] motion for judgment of acquittal de novo." United States v. Vigil, 523 F.3d 1258, 1262 (10th Cir. 2008). "We ask whether a reasonable jury could find a defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government and drawing reasonable inferences therefrom." Id. "If the [g]overnment's proof meets this standard, we must defer to the jury's verdict." United States v. Vallejos, 421 F.3d 1119, 1122 (10th Cir. 2005). We note that, "[i]n general, whether a given writing constitutes a threat is an issue of fact for the trial jury." United

4

States v. Turner, 720 F.3d 411, 419 (2d Cir. 2013) (internal quotation marks omitted).

One violates § 115(a)(1)(B) when he

> threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under [18 U.S.C. § 1114], with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties.

18 U.S.C. § 115(a)(1)(B). In addition, one violates § 875(c) when he "transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another." 18 U.S.C. § 875(c).

For purposes of both counts, the district court instructed the jury on the definition of "threat" using the Tenth Circuit Pattern Criminal Jury Instructions for alleged violations of 18 U.S.C. § 875(b):

> A threat is a serious statement expressing an intention to injure any person which under the circumstances would cause apprehension in a reasonable person as distinguished from mere idle or careless talk, exaggeration or something said in a joking manner. It is not necessary to prove that Mr. Stacy actually intended to carry out the threat.

Tr. of Reading of Instr. 11, ECF No. 157; see also R. Vol. 3 at 256; 10th Cir. Pattern Crim. Jury Instr. 2.37 (2011). The test is an objective one. See United States v. Viefhaus, 168 F.3d 392, 396 (10th Cir. 1999) ("In determining the existence of a threat under similar statutes, we have adopted an objective test."); United States v. Martin, 163 F.3d 1212, 1215-17 (10th Cir. 1998); see also United States v. Stefanik, 674 F.3d 71, 75 (1st Cir. 2012) ("The ultimate standard is objective—whether a reasonable person would

5

understand the statement to be threatening." (internal quotation marks omitted)).

Stacy has no quarrel with the instruction. Rather, Stacy contends that a reasonable person would view the e-mails as "mere idle or careless talk, exaggeration or something said in a joking matter." Tr. of Reading of Instr. 11, ECF No. 157. According to Stacy, this conclusion follows from the e-mails' "infantile . . . [and] repetitive use of swear words," "basic grammatical errors," "atrocious" spelling, "excessive[]" use of exclamation marks, and the general "sloppiness, immaturity, and idiocy" of the e-mails. Aplt. Br. at 12. "At most, the [e-mails] are a crude expression of anger by the author." Id. at 13. Further supporting his position, Stacy says, is the fact that he took no additional actions to convey intent to inflict injury.

We disagree. The e-mails are vicious and frightening, laced with expletives, racial epithets, and claims that the author had killed others and would kill Judge Conway. The e-mails pinpoint the sources of the author's rage—prison time served as a result of sentences imposed by Judge Conway and, supposedly, the resulting sexual exploitation of the author's girlfriend while he was incarcerated—both of which are emotionally-charged subjects that corroborate the credibility of the threats. Furthermore, the misspellings and grammar errors do not diminish the threatening nature of the e-mails; after all, poor spellers commit crimes, too.

To the text itself, we can add the reactions of the recipients. See Martin, 163 F.3d at 1216 (treating as relevant the recipient's reactions to a threat); United States v. Schneider, 910 F.2d 1569, 1571 (7th Cir. 1990) (Posner, J.) ("The fact that the victim acts

6

as if he believed the threat is evidence that he did believe it, and the fact that he believed it is evidence that it could reasonably be believed and therefore that it *is* a threat. By this chain of inference, the relevance of the judge's testimony is established." (emphasis in original)). Judge Conway, his administrative assistant, and a deputy U.S. Marshal were all concerned by the e-mails. Judge Conway perceived the e-mails as a true threat, and after reading them he took additional precautions in his day-to-day life to ensure his safety.

No additional actions by Stacy were necessary to convey an intent to inflict injury on Judge Conway. It is evident from the responses of those reading the e-mails that the e-mails were perceived as true threats. As the jury instructions stated, "[i]t is not necessary to prove that Mr. Stacy actually intended to carry out the threat." Tr. of Reading of Instr. 11, ECF No. 157.

In Stacy's reply brief, he contends by reliance on <u>Schneider</u> and the evidence of the reaction caused by Stacy's e-mails that we are conflating the objective test under 18 U.S.C. § 875(b) and 18 U.S.C. § 115(a)(1)(B) into a solely subjective test. The jury, however, had before it the texts of the e-mails <u>and</u> the jury was properly instructed regarding the definition of "threat" in determining whether a violation of 18 U.S.C. § 875(b) had been proven. Whether the e-mails were threats within that definition is an objective test. Added to the text in this case was the additional evidence of the subjective reaction caused when the e-mails were read. So not only did the jury have before it statements expressing an intent to injure Judge Conway that <u>would</u> cause apprehension in

7

a reasonable person, the jury also had the additional evidence that the statements <u>did</u> cause apprehension in reasonable persons. In sum, the government presented sufficient evidence that Stacy's e-mails to Judge Conway would cause apprehension in a reasonable person.

## III

We reject Stacy's sufficiency-of-the-evidence challenge and AFFIRM the jury's verdicts.

Entered for the Court


Mary Beck Briscoe
Chief Judge